UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

VILLAGE PIZZA HOUSE, INC.,                          :

                        Plaintiff,      :      Civil Action
                                   No.

          v.                           :      **JURY TRIAL DEMANDED**

EIC AGENCY, LLC,                                        :

                       Defendant.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## COMPLAINT

Plaintiff Village Pizza House, Inc. ("Village Pizza"), by its undersigned attorneys,

for its Complaint against Defendant EIC Agency, LLC ("EIC") alleges upon knowledge with

respect to itself and its own acts, and upon information and belief with respect to all other

matters, as follows:

## NATURE OF ACTION

1.      This action involves the cyber-extortion of a small family business,

Village Pizza, by its former website design firm, EIC.  In a calculated attempt to extort money

from Village Pizza, EIC hijacked Village Pizza's domain name and website and held it for

ransom.  While waiting for the ransom, and to pressure Village Pizza into paying, EIC used the

Village Pizza website to post advertisements for direct competitors, misdirect customers to the

physical address of a nearby competing pizza restaurant, and post misleadingly low menu prices.

2.      As EIC's scheme unfolded, Village Pizza received frequent complaints

from confused and frustrated customers and lost sales (including new customer sales likely to

lead to repeat business) because of EIC's wrongful and unlawful conduct.  Moreover, throughout

the entire scheme, it appears that EIC profited by displaying advertisements on the Village Pizza website.

3.     In an effort to save its business, Village Pizza registered a new domain name and created a new website (at significant expense) to replace the website hijacked by EIC and demanded that EIC immediately shut down the former website.  EIC refused.  Facing ongoing and substantial harm to its business and reputation, Village Pizza acquiesced and paid EIC's ransom.  Village Pizza now rightfully seeks to vindicate its rights and recover compensatory, statutory, and punitive damages and the attorneys' fees and expenses incurred in prosecuting this action.

## PARTIES

4.     Plaintiff Village Pizza House, Inc. is a Massachusetts corporation with a principal place of business at 312 Washington Street in Brookline, Massachusetts.  James Mallios ("Jim Mallios" or "Mr. Mallios") is a part-owner of Village Pizza and manages the Village Pizza restaurant.

5.     Defendant EIC Agency, LLC is a New York limited liability company with a principal place of business at 1674 Broadway, 8th Floor, New York, New York.  Sanford L. Wilk is a principal of EIC and resides at 1001 6th Avenue, 4th Floor, New York, New York.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction over this case pursuant to 15 U.S.C. § 1121 (trademarks), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(a) (trademarks).

7.     This Court has personal jurisdiction over EIC because, upon information and belief, EIC conducts substantial, continuous, and ongoing business within the Commonwealth of Massachusetts.  EIC also is subject to the personal jurisdiction of this Court

pursuant to Mass. Gen. Laws ch. 223A, § 3 because the commercial transactions that give rise to this action occurred within the Commonwealth of Massachusetts.

8.    Venue in this Court is proper under 28 U.S.C. § 1391(b).

## FACTUAL BACKGROUND

### Village Pizza, A Family-Owned Business, Has Been Operating In Brookline For More Than 30 Years

9.    Village Pizza is a family business in Brookline, Massachusetts that offers pizza and sandwiches among other items.  The restaurant was founded more than 40 years ago and is presently operated by Jim Mallios, his family, and a handful of employees.

10.    Since its inception in 1970, Village Pizza has continuously used the VILLAGE PIZZA HOUSE mark ("the Village Pizza Mark") in commerce and in connection with its restaurant business in Brookline.

11.    The Village Pizza Mark is used as a word mark as well as a stylized logo mark consisting of Village Pizza's name and artwork incorporating the colors dark red, orange or yellow:



12.    Village Pizza extensively advertises its business using the Village Pizza Mark and incorporates the Village Pizza Mark on promotional materials, pizza boxes, and, of course, its website.

13.    Through substantial advertising efforts and continuous operation for more than 30 years, the public has come to associate the Village Pizza Mark with the goods and

services provided by Village Pizza.  As such, the Village Pizza Mark has developed secondary

meaning within Village Pizza's geographic area of operation.

14.     The Village Pizza Mark is an important source indicator for Village

Pizza's products and services, and Village Pizza has acquired common law trademark rights in

the Village Pizza Mark in connection with its restaurant business.

**Village Pizza Registers The Village Pizza Domain**
**Name And Commissions A Website For Its Restaurant Business**

15.     In or about April 2002, Village Pizza registered the domain name

www.villagepizzahouse.com (the "Village Pizza Domain").  A domain name is a unique address

that allows internet users to easily locate and access a website.

16.      In or about April 2003, Village Pizza engaged a website design firm to

create a restaurant website (the "2003 Village Pizza Website") at the Village Pizza Domain.

17.     The 2003 Village Pizza Website quickly developed into an important

marketing tool.  As telephone directories became obsolete and web-based resources replaced

them, the 2003 Village Pizza Website became one of the restaurant's primary methods of

advertising and communicating information to customers.

**EIC Approaches Village Pizza To**
**Design And Host A New Restaurant Website**

18.     In or about September 2004, an EIC representative visited the Village

Pizza restaurant in person and spoke with Jim Mallios.  EIC offered to provide two services to

Village Pizza: first, EIC would design and create a new and improved Village Pizza website and,

second, EIC would provide hosting servers for the new website.

19.     EIC informed Village Pizza that it would be required to pay an upfront fee

for the design and creation of a new website and that the yearly cost to host the website thereafter

would be approximately $500.  Village Pizza agreed to engage EIC to develop the new website.

4

20.     Pursuant to the parties' oral arrangements, Village Pizza agreed to allow EIC to design and create a new website (the "2004 Village Pizza Website").  Village Pizza also purchased hosting services from EIC on a yearly basis.  There was no written contract between the parties for either service.

21.     EIC designed and created the 2004 Village Pizza Website extensively using the Village Pizza Mark and Village Pizza's trade dress, and arranged to make that new website available at the Village Pizza Domain.  The 2004 Village Pizza Website did not include any advertisements for other businesses:



22.     As part of the development of the 2004 Village Pizza Website, EIC asked Jim Mallios to provide EIC with the log-in credentials necessary to make the website available at the Village Pizza Domain.  Mr. Mallios agreed and entrusted EIC with the necessary log-in credentials to make the 2004 Village Pizza Website available at the Village Pizza Domain.

23.     Unbeknownst to Village Pizza, EIC violated this trust by altering the Village Pizza Domain registrant information and listing EIC Agency, LLC as the registrant.

Changing the listed registrant is <u>not</u> <u>necessary</u> to design, create, or publish a website.  Village Pizza never consented to this change.

24.     A domain name's registrant is generally not visible from the website itself, so Village Pizza was unaware of the changes EIC made.

25.     At the end of each calendar year from 2004 through 2009, Village Pizza paid EIC's hosting fee (approximately $500) for the next calendar year of hosting services, and EIC continued to host the 2004 Village Pizza Website at the Village Pizza Domain.

26.     In or about December 2009, Village Pizza paid EIC's hosting fee (as it had in years past) to continue to host the Village Pizza Website through the 2010 calendar year.

### Village Pizza Decides To Transition To A New Website Design Firm, But EIC Refuses To Release The Village Pizza Domain And Extorts Village Pizza Into Paying A Ransom Unrelated To Any Legitimate Service Or Expense

27.     In early 2010, Village Pizza decided to redesign its website using a different website design firm.  Village Pizza further informed EIC -- specifically, Sanford Wilk -- of Village Pizza's intent to discontinue EIC's hosting services.

28.     Although Village Pizza paid -- in full -- for EIC's services through the end of the 2010 calendar year, Village Pizza did not request any refund of the fee.

29.     In retaliation for Village Pizza's decision to change website design firms, EIC demanded the payment of $500 for the release of the Village Pizza Domain.  This "fee" amounted to a ransom payment and was unrelated to any legitimate service offered or expense incurred by EIC.

30.     In an effort to pressure Village Pizza into paying the ransom, EIC (at the direction of Sanford Wilk and/or other EIC employees) hijacked the 2004 Village Pizza Website and began to post unauthorized advertisements in place of Village Pizza promotional material.

These advertisements promoted, among other businesses, Village Pizza's <u>direct</u> <u>competitors</u> including competing pizza restaurants and businesses that offer food delivery services:



31.     These advertisements were designed to divert revenue away from Village Pizza and to its direct competitors.  Moreover, upon information and belief, EIC profited through this unauthorized conduct by receiving "pay-per-click" revenue each time a potential Village Pizza customer clicked on one of the advertisements.

32.     In an effort to further disrupt Village Pizza's business and pressure Village Pizza into paying the ransom, EIC altered important information displayed on the 2004 Village Pizza Website so as to mislead and frustrate customers.

33.     First, EIC altered the physical address listed for Village Pizza to misdirect customers to a nearby competing pizza restaurant in Brookline, Massachusetts.  Village Pizza

received frequent complaints from customers who were misdirected to that incorrect address, decreasing sales and damaging Village Pizza's reputation.

34.     Second, EIC altered and/or maintained menu prices on the 2004 Village Pizza Website that were lower than the correct prices offered in the Village Pizza restaurant. Village Pizza received frequent complaints from customers who were confused and frustrated by the discrepancy in menu prices and, in some circumstances, Village Pizza was forced to honor the lower menu price displayed on the 2004 Village Pizza Website.

**In An Effort To Save Its Business, Village Pizza**
**Purchases A New Domain Name And Designs A New Website**

35.     In or about July 2010, Village Pizza engaged a new website design firm to register a new domain name (www.villagepizzahouseonline.com) and build a new restaurant website (the "2010 Village Pizza Website") from scratch in an effort to replace the 2004 Village Pizza Website now hijacked and controlled by EIC.

36.     Village Pizza began using the 2010 Village Pizza Website at the new domain name, but the hijacked Village Pizza Website controlled by EIC continued to rank highly in internet search engine results and attracted a significant number of customers.  When customers searched the internet for the Village Pizza restaurant, EIC's hijacked website was often listed before or next to Village Pizza's new website in the search results list.  This caused a significant number of customers to mistakenly visit EIC's website, where they were confused by advertisements for competitors posted by EIC and misleading information regarding Village Pizza's physical location and menu prices.

37.     Moreover, Village Pizza made the 2004 Village Pizza Website available at the Village Pizza Domain for more than seven years before it was hijacked and modified by EIC. During that time, customers became accustomed to visiting the restaurant's website at the Village

Pizza Domain and Village Pizza amassed significant goodwill in that domain name through those marketing efforts.  As a direct result of EIC's wrongful conduct, Village Pizza lost substantially all of that goodwill when it was required to change domain names and incurred significant expense in transitioning to and promoting a new restaurant website.

38.     In or about April 9, 2013, Village Pizza, by its attorney, again requested that EIC immediately shut down the 2004 Village Pizza Website and release the Village Pizza Domain.

39.     EIC refused and reiterated its demand that Village Pizza pay the $500 ransom.

### Faced With No Other Options, Village Pizza Surrenders To EIC's Extortion, But Not Before Suffering Significant Harm To Its Sales And Reputation

40.     In or about August 2013, Village Pizza surrendered to EIC's extortion and paid a negotiated ransom for the return of the Village Pizza Domain.  Only then did EIC agree to shut down the 2004 Village Pizza Website and release the Village Pizza Domain.

41.     Village Pizza paid the ransom under protest.

42.     The parties did not enter into any written agreement regarding the payment of EIC's ransom or the release of the Village Pizza Domain.  Village Pizza did not represent or agree that the payment of EIC's ransom was in exchange for the waiver or release of any rights or claims that Village Pizza may have relating to EIC or the unlawful conduct described herein.

### FIRST CLAIM FOR RELIEF CYBERSQUATTING UNDER 15 U.S.C. § 1125(d)

43.     Village Pizza repeats and realleges all of the allegations set forth in paragraphs 1-42 as if fully set forth herein.

44.     Village Pizza had valid trademark rights in the Village Pizza Mark at the time the Village Pizza Domain was registered and at all relevant times thereafter.

45.     The Village Pizza Mark was distinctive at the time the Village Pizza Domain was registered and at all relevant times thereafter.

46.     The Village Pizza Domain is identical and/or confusingly similar to the Village Pizza Mark.

47.     EIC was aware at all relevant times of Village Pizza's trademark rights in the Village Pizza Mark.

48.     EIC has no trademark or any other intellectual property rights to the Village Pizza Mark and Village Pizza has not given EIC any license, permission, or authorization by which it may use the Village Pizza Mark other than those necessary for the delivery of services to Village Pizza (i.e. the creation and management of the 2004 Village Pizza Website prior to Village Pizza's termination of EIC's services).

49.     EIC did not use the Village Pizza Domain for any bona fide noncommercial purpose or for any other purpose that may constitute fair use of the Village Pizza Mark.

50.     EIC used the 2004 Village Pizza website and the Village Pizza Domain in commerce with bad faith intent to profit from the Village Pizza Mark by maintaining control of, and using the Village Pizza Domain to extort payment of an unlawful "fee."

51.     EIC's attempt to elicit money for the Village Pizza Domain is conclusive evidence of bad faith.

52.     As a result of EIC's conduct alleged herein, Village Pizza has suffered substantial damage to its business.

53.     As a result of EIC's conduct alleged herein, Village Pizza is entitled to

recover, at its election, statutory damages pursuant to 15 U.S.C. § 1117 in an amount up to one

hundred thousand dollars ($100,000.00).

54.     This is an exceptional case making Village Pizza eligible for an award of

attorneys' fees and expenses pursuant to 15 U.S.C. § 1117.

### SECOND CLAIM FOR RELIEF
### TRADEMARK INFRINGEMENT

55.     Village Pizza repeats and realleges all of the allegations set forth in

paragraphs 1-54 as if fully set forth herein.

56.     Village Pizza had valid trademark rights in the Village Pizza Mark at the

time the Village Pizza Domain was registered and at all relevant times thereafter.

57.     EIC was aware of Village Pizza's trademark rights in the Village Pizza

Mark at all relevant times as described above.

58.     EIC's bad-faith use and operation of the Village Pizza Domain and the

2004 Village Pizza Website caused confusion, mistake, and/or deception as to the source of

Village Pizza's products and thereby constituted trademark infringement in violation of the

Lanham Act.

59.     EIC's conduct, as alleged herein, was willful.

60.     This is an exceptional case making Village Pizza eligible for the recovery

of attorneys' fees and expenses pursuant to 15 U.S.C. § 1117.

### THIRD CLAIM FOR RELIEF
### VIOLATION OF MASS. GEN. LAWS CH. 93A § 11

61.     Village Pizza repeats and realleges all of the allegations set forth in

paragraphs 1-60 as if fully set forth herein.

62.     As alleged herein, EIC engaged in unfair methods of competition and unfair or deceptive acts or practices in violation of Mass. Gen. Laws Ch. 93A, § 11.

63.     At all relevant times and as alleged herein, EIC and Village Pizza were engaged in trade or commerce.

64.     The actions and transactions constituting the unfair methods of competition or the unfair or deceptive acts or practices alleged herein occurred primarily and substantially within the Commonwealth of Massachusetts.

65.     Village Pizza suffered a loss of money and/or property as a result of EIC's conduct.

66.     EIC's conduct, as alleged herein, was knowing and willful.

67.     Village Pizza is eligible to recover up to three times its actual damages, attorneys' fees, and expenses.

## PRAYER FOR RELIEF

WHEREFORE, Village Pizza respectfully requests that this Court:

A.     Award Village Pizza compensatory damages in an amount to be determined at trial;

B.     Award Village Pizza statutory damages of $100,000;

C.     Award Village Pizza treble damages pursuant to Mass. Gen. Laws Ch. 93A;

D.     Award Village Pizza all of its attorneys' fees and expenses incurred in prosecuting this action; and

E.     Award all other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Village Pizza hereby demands a trial on all triable claims.

Dated: September 16, 2013                    Respectfully submitted,
        Boston, Massachusetts


                                             /s/  *Aaron T. Morris*
                                             Aaron T. Morris (BBO # 685076)
                                             Christopher G. Clark (BBO # 663455)
                                             One Beacon St., Floor 31
                                             Boston, MA 02108
                                             (617) 573-4874
                                             aaron.morris@skadden.com

                                             Counsel for Plaintiff
                                             Village Pizza House, Inc.